**IN THE UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| THOEUN VEN, | No. CIV S-03-2416-WBS-CMK |
| Plaintiff, | |
| vs. | FINDINGS AND RECOMMENDATIONS |
| JO ANNE B. BARNHART, Commissioner of Social Security, | |
| Defendant. | |

Plaintiff, who is proceeding with retained counsel, brings this action for judicial review of a final decision of the Commissioner of Social Security pursuant to 42 U.S.C. § 405(g). Pending before the court are plaintiff's motion for summary judgment (Doc. 15) and defendant's cross-motion for summary judgment (Doc. 17).

/ / /

/ / /

/ / /

/ / /

/ / /

# I. BACKGROUND

Plaintiff applied for supplemental security income ("SSI") benefits on November 19, 2001, based on disability. In her application, plaintiff claims that her impairment began on October 20, 2001. Plaintiff claims her disability consists of abdominal pain, depression, headaches, dizziness, loss of concentration, suicidal ideation, asthma, and nightmares. Plaintiff is a naturalized United States citizen born in Cambodia March 15, 1950. Plaintiff cannot communicate in English.

Plaintiff had filed a prior application for benefits and was found to be disabled in June 1987. In a June 1, 1998, decision, the Administrative Law Judge ("ALJ") determined that plaintiff's disability was ceased in July 1996 due to medical improvement. That decision was affirmed by the Appeal Council and plaintiff did not seek review in the district court. In February 2000, plaintiff filed another SSI application. In an October 19, 2001, decision, the ALJ determined that plaintiff was not disabled. That decision was affirmed by the Appeals Council and, again, plaintiff did not seek judicial review. Plaintiff's November 19, 2001, application was initially denied. Following denial of her request for reconsideration, plaintiff requested an administrative hearing, which was held on February 3, 2003, before ALJ Daniel G. Heely

In his August 13, 2003, decision, the ALJ made the following findings:

1. The claimant has not engaged in substantial gainful activity since the alleged onset of disability;

2. The claimant has an impairment or a combination of impairments considered "severe" based on the requirements in the Regulations . . .;

3. These medically determinable impairments do not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4;

4. The undersigned finds the claimant's allegations regarding her limitations are not totally credible for the reasons set forth in the body of the decision;

5. The undersigned has carefully considered all of the medical opinions in the record regarding the severity of the claimant's impairments;

/ / /

/ / /

|  |  |  |
|---|---|---|
| 6. | | The claimant has the following residual functional capacity: to perform simple routine tasks with limited contact with the public and co-workers; the claimant has no restriction of activities of daily living, mild difficulties maintaining social functioning, moderate deficiencies of concentration, persistence or pace, and no evidence of episodes of decompensation; |
| 7. | | The claimant has no past relevant work; |
| 8. | | The claimant is an 'individual closely approaching advanced age;' |
| 9. | | The claimant is 'unable to communicate in English;' |
| 10. | | The claimant has no exertional limitations; |
| 11. | | Considering the range of work at all levels that the claimant is still functionally capable of performing, in combination with her age, education, and work experience, and using section 204.00 of the Medical-Vocational Guidelines as a framework for decision-making, the claimant is not disabled; and |
| 12. | | The claimant was not under a "disability," as defined in the Social Security Act, at any time through the date of this decision. |

Based on these findings, the ALJ concluded that plaintiff was not disabled and, therefore, not entitled to SSI benefits. After the Appeals Council declined review, this appeal followed.

## II. STANDARD OF REVIEW

The court reviews the Commissioner's final decision to determine whether it is: (1) based on proper legal standards; and (2) supported by substantial evidence in the record as a whole. See Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999). "Substantial evidence" is more than a mere scintilla, but less than a preponderance. See Saelee v. Chater, 94 F.3d 520, 521 (9th Cir. 1996). It is ". . . such evidence as a reasonable mind might accept as adequate to support a conclusion." See Richardson v. Perales, 402 U.S. 389, 402 (1971). The record as a whole, including both the evidence that supports and detracts from the Commissioner's conclusion, must be considered and weighed. See Howard v. Heckler, 782 F.2d 1484, 1487 (9th Cir. 1986); Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985). The court may not affirm the Commissioner's decision simply by isolating a specific quantum of supporting evidence. See

3

Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989). If substantial evidence supports the administrative findings, or if there is conflicting evidence supporting a particular finding, the finding of the Commissioner is conclusive. See Sprague v. Bowen, 812 F.2d 1226, 1229-30 (9th Cir. 1987). Therefore, where the evidence is susceptible to more than one rational interpretation, one of which supports the Commissioner's decision, the decision must be affirmed, see Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002), and may be set aside only if an improper legal standard was applied in weighing the evidence, see Burkhart v. Bowen, 856 F.2d 1335, 1338 (9th Cir. 1988).

### III.  DISCUSSION

In her motion for summary judgment, plaintiff argues that, given her non-exertional limitations, the ALJ erred by: (1) applying the Medical-Vocational Guidelines; and (2) failing to obtain the testimony of a vocational expert.

The Medical-Vocational Guidelines ("Grids") provide a uniform conclusion about disability for various combinations of age, education, previous work experience, and residual functional capacity. The Grids allow the Commissioner to streamline the administrative process and encourage uniform treatment of claims based on the number of jobs in the national economy for any given category of residual functioning capacity. See Heckler v. Campbell, 461 U.S. 458, 460-62 (1983) (discussing creation and purpose of the Grids).

The Commissioner may apply the Grids in lieu of taking the testimony of a vocational expert only when the Grids accurately and completely describe the claimant's abilities and limitations. See Jones v. Heckler, 760 F.2d 993, 998 (9th Cir. 1985); see also Heckler v. Campbell, 461 U.S. 458, 462 n.5 (1983). Thus, the Commissioner generally may not rely on the Grids if a claimant suffers from non-exertional limitations because the Grids are based on strength factors only. See 20 C.F.R., Part 404, Subpart P, Appendix 2, § 200.00(b). "If a claimant has an impairment that limits his or her ability to work without directly affecting his or

her strength, the claimant is said to have non-exertional . . . limitations that are not covered by the Grids." Penny v. Sullivan, 2 F.3d 953, 958 (9th Cir. 1993) (citing 20 C.F.R., Part 404, Subpart P, Appendix 2, § 200.00(d), (e)). The Commissioner may, however, rely on the Grids even when a claimant has combined exertional and non-exertional limitations, if non-exertional limitations do not impact the claimant's exertional capabilities.[1] See Bates v. Sullivan, 894 F.2d 1059, 1063 (9th Cir. 1990); Polny v. Bowen, 864 F.2d 661, 663-64 (9th Cir. 1988).

In cases where the Grids are not fully applicable, the ALJ may meet his burden under step five of the sequential analysis by propounding to a vocational expert hypothetical questions based on medical assumptions, supported by substantial evidence, that reflect all the plaintiff's limitations. See Roberts v. Shalala, 66 F.3d 179, 184 (9th Cir. 1995). Specifically, where the Grids are inapplicable because plaintiff has sufficient non-exertional limitations, the ALJ is required to obtain vocational expert testimony. See Burkhart v. Bowen, 587 F.2d 1335, 1341 (9th Cir. 1988).

In light of these standards, the court need only decide one issue in order to resolve both of plaintiff's arguments – whether plaintiff's non-exertional limitations preclude application of the Grids. Because non-exertional limitations only preclude application of the Grids where

---

[1] Exertional capabilities are the primary strength activities of sitting, standing, walking, lifting, carrying, pushing, or pulling and are generally defined in terms of ability to perform sedentary, light, medium, heavy, or very heavy work. See 20 C.F.R., Part 404, Subpart P, Appendix 2, § 200.00(a). "Sedentary work" involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. See 20 C.F.R. §§ 404.1567(a) and 416.967(a). "Light work" involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. See 20 C.F.R. §§ 404.1567(b) and 416.967(b). "Medium work" involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds. See 20 C.F.R. §§ 404.1567(c) and 416.967(c). "Heavy work" involves lifting no more than 100 pounds at a time with frequent lifting or carrying of objects weighing up to 50 pounds. See 20 C.F.R. §§ 404.1567(d) and 416.967(d). "Very heavy work" involves lifting objects weighing more than 100 pounds at a time with frequent lifting or carrying of objects weighing 50 pounds or more. See 20 C.F.R. §§ 404.1567(e) and 416.967(e).
Non-exertional activities include mental, sensory, postural, manipulative, and environmental matters which do not directly affect the primary strength activities. See 20 C.F.R., Part 404, Subpart P, Appendix 2, § 200.00(e).

such limitations impact the claimant's exertional capabilities, such as sitting, standing, walking, lifting, carrying, pushing, or pulling, the question is whether there is substantial evidence to support the ALJ's finding that plaintiff's non-exertional limitations do not impact her ability to work. If substantial evidence exists to support the ALJ's finding, then use of the Grids in lieu of vocation expert testimony was appropriate and, thus, both of plaintiff's arguments must fail. If, however, substantial evidence does not exist in the record as a whole, plaintiff would be entitled to a remand for further proceedings which include vocational expert testimony.

It is interesting to note that plaintiff does not challenge the ALJ's findings which serve as the basis for his ultimate conclusion on the issue of the impact of plaintiff's non-exertional limitations. Specifically, plaintiff does not challenge the ALJ's findings as to the nature of plaintiff's impairments, plaintiff's credibility, or the weight given to various medical opinions. Therefore, such findings are not at issue and the court will accept them. The court's analysis will be limited to determining whether the ALJ's conclusion that plaintiff's non-exertional limitations were not significant is supported by substantial evidence, given the ALJ's undisputed findings as to plaintiff's impairments, credibility, and weight.

The ALJ adopted a prior administrative conclusion that plaintiff has no exertional limitations.[2] Thus, the limitations discussed by the ALJ in the April 13, 2003, decision are non-exertional. In particular, the ALJ addressed plaintiff's mental disorder in detail. After accurately describing the regulatory standards for addressing mental disorders, the ALJ summarized the records of plaintiff's psychiatric treatment. The ALJ's decision sets forth the following findings as to plaintiff's mental disorder:

> 1.  Great weight is given to the medical conclusion that the claimant's abilities to understand, remember and carry out simply one-or-two step job instructions were not limited;

///

---

[2] No new evidence was adduced in plaintiff's second administrative proceeding and plaintiff does not challenge this determination in the context of this action.

>   2.  The claimant, herself, has acknowledged that she has the ability to feed, bathe and dress herself, cook, clean her teeth, wash her face, wash dishes and go shopping once or twice a month; such abilities suggest a less than even a mild restriction in activities of daily living;
>
>   3.  The medical consultant's conclusion that the claimant is limited in carrying out detailed instructions is consistent with the medical finding on a later mental examination that the claimant had poor concentration;
>
>   4.  There is no objective medical evidence demonstrating episodes of decompensation of extended duration;
>
>   5.  Significant weight is given to the medical consultant's determination that the claimant could perform simple tasks;
>
>   6.  Substantial weight is given to the medical determinations that the claimant has a poor ability to relate to co-workers, a poor ability to deal with the public, and a poor ability to concentrate;
>
>   7.  The claimant has no restrictions of activities of daily living, mild difficulties maintaining social functioning, moderate deficiencies of concentration, persistence or pace, and no evidence of episodes of decompensation; and
>
>   8.  The claimant retains the residual functional capacity to perform simple routine tasks with limited contact with the public and co-workers.

In light of these findings, the ALJ concluded that, because plaintiff's non-exertional limitations only required that plaintiff perform simple tasks and limited contact with the public and co-workers, the non-exertional limitations do not significantly compromise her ability to do work. Given the ALJ's underlying determinations as to credibility and weight – which, again, are not in dispute here – the court concludes that this finding is clearly supported by substantial evidence in the record as a whole. Plaintiff's mental disorder does not limit her ability to perform simple tasks. Plaintiff's mental disorder does not limit her activities of daily life. There is no evidence of decompensation. Therefore, the Commissioner's final decision should be affirmed.

/ / /

/ / /

/ / /

## IV.  CONCLUSION

Based on the foregoing, the court concludes that the Commissioner's final decision is based on substantial evidence and proper legal analysis.  Accordingly, the undersigned recommends that:

    1.    Plaintiff's motion for summary judgment be denied;

    2.    Defendant's cross-motion for summary judgment be granted; and

    3.    The Clerk of the Court be directed to enter judgment and close this file.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within ten days after being served with these findings and recommendations, any party may file written objections with the court.  The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Failure to file objections within the specified time may waive the right to appeal the District Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

DATED:   January 19, 2006.

                                        **CRAIG M. KELLISON**
                                        UNITED STATES MAGISTRATE JUDGE